United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ACCENTCARE INC., et al.,

    Petitioners,

v.

DEANNE ECHEVARRIA, et al.,

    Respondents.

No. C 15-01078 JSW

**ORDER REGARDING MOTION TO COMPEL INDIVIDUAL ARBITRATION**

Now before the Court is the motion to compel individual arbitration filed by Petitioners AccentCare, Inc. and AccentCare of California, Inc. (collectively, "Petitioners"). The Court finds this matter suitable for disposition without oral argument and VACATES the hearing set for June 5, 2015. *See* N.D. Cal. Civ. L.R. 7-1(b). Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, the Court denies Petitioners' motion for the reasons set forth below.

## BACKGROUND

On March 5, 2015, Respondents Deanne Eschevarria and Robin Gail Hayes (collectively "Respondents") filed a demand for class arbitration. (Ex. E to Mot. to Compel.) Respondents do not currently have a pending claim under California's Private Attorney General Act ("PAGA"), California Labor Code §§ 2698, *et seq*. Although they did represent that they intended to file a PAGA claim in state court, Respondents have not yet decided whether or not they will file one in state court. (*See* Mot. to Dismiss at 8, n.6.) Petitioners contend that only individual arbitration proceedings, as opposed to class-wide, are authorized by the relevant

arbitration agreement. To enforce their understanding of the arbitration agreement, Petitioners filed their petition to compel individual arbitration.

The arbitration agreements that Respondents signed provide: "[t]o the fullest extent allowed by law, any controversy, claim or dispute between Employee and the Company . . . relating to or arising out of Employee's employment or the cessation of that employment. . . will be submitted to final and binding arbitration . . . in accordance with the American Arbitration Association ("AAA") National Rules for the Resolution of Employment Disputes as the exclusive remedy for such controversy, claim or dispute." (Exs. A & B to the Petition, ¶ 2.) The arbitration agreements further provide that agreement "is to be construed as broadly as is permissible under applicable law." (*Id*.)

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

**A.    Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002) ("Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue.").

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been

made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 925-26 (1985) (internal quotations omitted).

Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

**B.      Petitioners' Motion to Compel.**

The parties in this case do not dispute that there are valid arbitration agreements or that the Respondents' individual claims fall within the scope of these arbitration agreements. Rather, the parties dispute whether the arbitration may proceed on a class-wide basis and whether the Court or the arbitrator shall make this determination. "Neither the Supreme Court nor the Ninth Circuit has explained definitively when the availability of class-wide arbitration might be a question for a court and when it might be a question for an arbitrator." *Vazquez v. ServiceMaster Global Holding Inc.*, 2011 WL 2565574, *3 (N.D. Cal. June 29, 2011). A plurality in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) opined that this question is a matter of contract interpretation and arbitration procedure and, thus, is one for the arbitrator. *See also id.* at 455 (Stevens, J., concurring in judgment but agreeing only that the question is "[a]rguably" for the arbitrator). The Supreme Court clarified in *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 599 U.S. 662, 679 (2010) that "*Bazzle* did not yield a majority decision" and that the question of whether the Court or the arbitrator should make this determination remains open.

3

In contrast to matters of contract interpretation and arbitration procedure, questions of arbitrability are presumably determined by the court. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citations omitted). Absent "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability, the Court should not presume that intention. *Id.* at 944 (internal quotation marks and brackets omitted). Moreover, if an arbitration agreement is silent or ambiguous about who should decide arbitrability, the question should be put to the court because to do otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945.

However, the Court need not determine whether the availability of class-wide arbitration is a matter of contract interpretation and arbitration procedure or is a question of arbitrability. Even if it is a question of arbitrability, the Court finds that there is clear and unmistakable evidence that the parties intended arbitrability to be determined by the arbitrator. *See First Options of Chicago*, 514 U.S. at 944-45.

Respondents argue that the incorporation of the AAA rules into the arbitration agreements provides clear and unmistakable evidence of the parties' intent to submit the question of arbitrability to the arbitrator. Although the issue is not entirely settled in the Ninth Circuit, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Amer., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (citing cases). As another court in this District recently noted "the overwhelming consensus of other circuits, as well as the vast majority of decisions in this district, support [the] claim that, in the context of this case, incorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator." *Zenelaj v. Handybook, Inc.*, --- F. Supp. 3d ---, 2015 WL 971320, *3 (N.D. Cal. March 3, 2015).

4

In *Oracle*, the Ninth Circuit found that there was "no reason to deviate from the prevailing view that incorporation of . . . arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Oracle*, 724 F.3d at 1074-75. The court, thus, held that "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the . . . rules delegates questions of arbitrability to the arbitrator." *Id.* at 1075. The court "express[ed] no view as to the effect of incorporating arbitration rules into consumer contracts." *Id.* at 1075 n.2. As noted by the court in *Zenelaj*, nearly every decision in the Northern District of California subsequent to *Oracle* has not limited its holding to "sophisticated parties." 2015 WL 971320 at *3 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 7206620, *4 (N.D. Cal. Dec. 18, 2014) (finding delegation of arbitrability in the context of antitrust litigation); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, *4 (N.D. Cal. May 7, 2014) (same, in online loan agreement); *Crook v. Wyndham Vacation Ownership, Inc.*, *4, *6 (N.D. Cal. Nov. 8, 2013) (same, in time share agreement); *but see Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *12-13 (N.D. Cal. June 25, 2014) (finding incorporation was insufficient to establish delegation for consumers where the arbitration agreement created "multiple ambiguities" about which rules ultimately applied and where consumer were purported to be bound by the arbitration agreement even if they never read the terms of service or clicked to accept them); *Moody v. Metal Supermarket Franchising Amer. Inc.*, 2014 WL 988811, *3 (N.D. Cal Mar. 10, 2015). District courts outside of the Northern District but within the Ninth Circuit have also held subsequent to *Oracle* that the incorporation of AAA rules constitutes clear and unmistakable evidence of intent, regardless of the sophistication of the parties. *See Marriott Ownership Resorts, Inc. v. Flynn*, 2014 WL 7076827, *8 (D. Haw. Dec. 11 2014); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, *4 (W.D. Wash. Sept. 11, 2014); *Walsh v. Microsoft Corp.*, 2014 WL 4168479, *4 (W.D. Wash. Aug. 20, 2014).

To the extent the effectiveness of delegating arbitrability through incorporation of AAA rules is limited to "sophisiticated parties," such a limitation would not assist Petitioners. The Court notes that Petitioners are the companies that employed Respondents and drafted the

5

arbitration agreements at issue. Petitioners are not uninformed, unsophisticated consumers. Therefore, the Court finds no reason to diverge from the prevailing view that the question of arbitrability may be, and was, delegated to the arbitrator by the incorporation of the AAA rules. Accordingly, the Court finds that the arbitrator, not the Court, shall determine whether the arbitration agreements allow for class-wide arbitration and, thus, denies the motion to compel individual arbitration.[1]

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioners' motion to compel individual arbitration.

**IT IS SO ORDERED.**

Dated: June 1, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[1] Petitioners also move to compel individual arbitration of Respondents' claims under PAGA. However, Respondents do not have any pending PAGA claims. Therefore, any ruling on this issue would be an improper advisory opinion.